* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rideout. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury, giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such time, an employment relationship existed between the Employee-Plaintiff and the Defendant-Employer.
3. The N.C. Association of County Commissioners, by and through its third party administrator, Sedgwick CMS, was the carrier of Employer-Defendant's workers' compensation insurance on November 4, 2002.
4. The Plaintiff's average weekly wage will be determined using a Form 22.
5. The Plaintiff's claim was accepted as a medical only claim and medical bills relative to the initial exposure have been paid by the Defendants.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 61 year-old female, with a bachelors' degree from Elizabeth City State University in social work.
2. Plaintiff was hired as an emergency medical technician with Hyde County in 1997. Plaintiff testified that she had to undergo special training in order to perform the job. The work schedule rotated seven days on, seven days off. The personnel would be on call 24 hours a day while they were on schedule. The personnel were allowed to stay at their homes and engage in normal activities while awaiting a call.
3. Plaintiff worked with another emergency medical technician and rotated possession of the emergency vehicle with her every other week. Should a call come in, the team *Page 3 
member with the vehicle would have to go pick up the other team member before responding to a call. Ms. Gibbs stated that the ambulance was dispatched for all types of medical emergencies. The position required a team member to be able to lift equipment and patients, push, pull, climb stairs, and administer medicines and medical care.
4. On November 4, 2002, plaintiff and two other EMTs transported a patient who appeared to have facial and inhalation burns. The patient was a dumpster operator who experienced burning and itching on his face and arms while working in a dumpster.
5. Based on the unusual nature of the symptoms and injuries of the patient, plaintiff contacted Ms. Jackie Robbins and stated concern they were dealing with a hazardous material exposure patient. The county manager, Mr. Stein, was notified and instructed the emergency crew to take off the patient's clothes and to place them in a hazardous materials bag. The team, while wearing gloves, stripped the patient's clothes and placed them into a double bio-hazard bag which was then tied shut, and also turned on the air vents and air conditioning in the vehicle.
6. While on the way to the hospital, plaintiff opened and closed the biohazard bag containing the patient's clothing to obtain a telephone number and noticed an odor from the bag.
7. The drive to the hospital lasted approximately 45 minutes. After transferring custody of the patient, the ambulance was cleaned with bleach. The type of chemical to which plaintiff was exposed remains unknown.
8. The following morning, plaintiff noticed that her throat and eyes hurt and her eyes were tearing. Plaintiff called Ms. Robbins and informed her of her concerns. Arrangements were made by Mr. Stein for plaintiff and two of her co-workers, Ms. Schmidt and Mr. Loftus, to be evaluated by Dr. Charles Boyette in Belhaven. *Page 4 
9. On November 8, 2002, Dr. Boyette examined plaintiff and diagnosed plaintiff with toxic exposure and upper airway problems. Dr. Boyette made the diagnosis of COPD, in part, based on his awareness of plaintiff's history of cigarette smoking, congested breathing pattern, and chronic cough. Dr. Boyette referred plaintiff to Dr. Richard Rumley, an infectious disease specialist.
10. Dr. Rumley first examined plaintiff on January 27, 2003. At that time plaintiff had complaints of exposure to a toxic substance, nose bleed, cough, and pharyngitis. An x-ray revealed changes consistent with COPD. Dr. Rumley diagnosed plaintiff with COPD and toxic exposure, but did not form an opinion as to causation. Dr. Rumley recommended that plaintiff quit smoking because it was causing her breathing problems to worsen. Dr. Rumley thereafter referred plaintiff to Dr. Richard Mann.
11. Plaintiff saw Dr. Mann, a pulmonary specialist, on April 28, 2003. Dr. Mann testified that the work-related exposure only brought attention to plaintiff's pre-existing COPD.
12. Plaintiff was evaluated by Dr. Hayes, a pulmonologist, on August 8, 2004. Dr. Hayes also indicated that plaintiff's COPD was caused by smoking, not the incident of November 4, 2002, and that plaintiff was already suffering from COPD at the time of the incident now at issue. Dr. Hayes indicated that any exacerbation of plaintiff's symptoms would be temporary in nature, and exposure to the unknown chemical, did not permanently worsen or cause plaintiff's COPD.
13. Dr. Boyette testified that plaintiff's exposure of November 4, 2002 did not cause plaintiff's COPD, but only made her aware of the condition.
14. Dr. Mann testified that exposure to the unknown chemical on November 4, 2002 did not cause the plaintiff's CODP. When asked whether he has a medical opinion as to whether *Page 5 
exposure to this unknown chemical would have aggravated or exacerbated her emphysema, Dr. Mann stated "It would have, I believe, exacerbated her symptoms and brought her underlying limitation to her attention. While it did not cause or even worsen her emphysema, the worsening the emphysema itself, it did cause her respiratory tract irritation and brought her emphysema to her attention and to our attention."
4. Dr. Boyette, Dr. Mann and Dr. Hayes all indicated that plaintiff's COPD was caused by smoking, not the November 4, 2002 incident. The physicians agreed that it would have been inevitable that plaintiff would have ultimately recognized her COPD and that the COPD would have progressed to its current state.
5. Dr. Boyette, Dr. Hayes and Dr. Mann agree that after a short time elapsed after the incident of November 4, 2002, plaintiff's continuing respiratory problems were a result of her pre-existing COPD and were not related to the injury in question. Accordingly, any current disability is a result of the underlying COPD and not of the toxic exposure experienced on November 4, 2002.
6. The greater weight of the evidence shows that plaintiff's current condition of COPD, along with any resulting disability, was not caused by the toxic exposure which occurred on November 4, 2002.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not proven an occupational disease, which was due to causes and conditions characteristic of and peculiar to employment and which was not an ordinary disease *Page 6 
of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53 (13); Booker v. Duke Medical Center, 297 N.C. 458 (1979)
2. If an employee has a pre-existing condition, he or she must prove that an injury by accident "materially accelerate[d] or aggravate[d]" the pre-existing condition in order for the injury to be compensable.Anderson v. Northwestern Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951) (in dicta). The medical evidence does not show that the work-related exposure of November 4, 2002 materially accelerated or aggravated plaintiff's pre-existing COPD, and the COPD and continuing respiratory problems are therefore not compensable. Id.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. This claim, under the law, must be DENIED.
2. Each side shall pay its own cost.
This the __ day of March, 2007.
S/___________________ DANNY LEE MCDONALD COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 7 
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER